IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHAEL ANNE ELROD, ANDREW KAUFMAN, and SARAH MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NO TAX 4 NASH, JIM ROBERTS, MICHELLE FOREMAN, KIMBERLY EDWARDS, and JOHN DOES 1-10,<br><br>Defendants. | No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO
47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**

Plaintiffs Rachael Anne Elrod, Andrew Kaufman, and Sarah Martin, individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of counsel, and on information and belief as follows:

**NATURE OF ACTION**

1. This case involves activities conducted by a group identified as "No Tax 4 Nash" (or "NoTax4Nash") which is believed to be controlled by Defendants Jim Roberts, Michelle Foreman, Kimberly Edwards, and other persons and/or entities whose identities are presently unknown to Plaintiffs ("John Does 1-10"), specifically the contacting of individuals through the use of prerecorded messages and automated calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2. "No Tax 4 Nash" has violated the TCPA by making calls to Plaintiffs and Class Members using an "automatic telephone dialing system" and an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1), without Plaintiffs' and Class Members' prior express consent within the meaning of the TCPA.

3. Plaintiffs bring this action for injunctive relief and statutory damages, all arising from the illegal activities of "No Tax 4 Nash" and all Co-Defendants.

## JURISDICTION AND VENUE

4. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $3,000.00 in statutory damages for each call that violated the TCPA, since the calls at issue violated the TCPA in two ways. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

5. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Defendants because each individual Defendant is a resident of the State of Tennessee for purposes of personal jurisdiction, and Defendant No Tax 4 Nash's principal place of business is in the State of Tennessee, where it directed the illegal telephone calls at issue in this case.

7. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendant No Tax 4 Nash is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, all known individual Defendants reside in this judicial district,

and Defendant No Tax 4 Nash's contacts with this judicial district are sufficient to subject it to personal jurisdiction here.

## PARTIES

8. Plaintiff Rachael Anne Elrod is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

9. Plaintiff Andrew Kaufman is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

10. Plaintiff Sarah Martin is, and at all times mentioned herein was, an individual citizen of the State of Tennessee and resident of Nashville.

11. Defendant "No Tax 4 Nash" (or "NoTax4Nash") is a corporation, association of persons banded together for a specific purpose, or the trade name of a corporation or association. Its mailing address, P.O. Box 210976, Nashville, TN 37221, is registered to Defendant Jim Roberts.

12. Defendants Jim Roberts, Michelle Foreman, and Kimberly Edwards are, and at all times mentioned herein were, individual citizens of the State of Tennessee.

13. Defendants John Does 1-10 are individuals and entities whose identities are presently unknown to Plaintiffs and will be revealed in discovery, and who placed the calls at issue in this action or who directed the placement of the calls at issue in this action by actual or apparent agents as their principals, or ratified their agents' acts.

# THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

14. In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2]

16. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] 47 U.S.C. § 227(b)(1)(A)(iii).
[3] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17. In 2003, the FCC affirmed that it is unlawful "to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number."[4]

18. The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[5] The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[6] The 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[7] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[8] In 2018, a D.C. Circuit decision struck down portions of a 2015 FCC Order, but the prior FCC Orders are still binding.

19. Courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[9]

---

[4] *Id.*, ¶ 165. *See* 47 U.S.C. § 227(b)(1), which contains exceptions for calls made for emergency purposes or made with the prior express consent of the called party.
[5] *Id.* at 14,143 n. 31.
[6] *Id.* at 14,092.
[7] 23 FCC Rcd. at 566.
[8] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012).
[9] *See, e.g., Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC,,* 679 F.3d 637, 638-39 (7th Cir. 2012).

20. On January 4, 2008, the FCC released a Declaratory Ruling wherein it "reiterate[d] that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party."[10]

21. In a portion unaffected by the D.C. Circuit, the 2015 FCC Order held that consumers may revoke consent through reasonable methods. Thus, consumers may revoke consent through any reasonable method, including orally: "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."[11]

22. A single call using both a prerecorded voice and an autodialer constitutes two violations of the TCPA, even if both violations arose from the same call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015).

23. The TCPA and the Regulations impose liability on a person or entity where calls are made on its behalf. The FCC has found that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Indeed, vicarious liability is a critical feature of the TCPA, which does not permit a party to avoid liability by placing it on its expressly, impliedly, or apparently authorized agents. *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. And Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674-75 (2016).

---

[10] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, ¶ 11, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[11] 2015 Order at (¶ 64).

24. Political campaign-related calls or text messages are not exempt from the TCPA or the FCC's rules and require the called party's prior express consent if an autodialer is used to send the messages or a prerecorded message is played on the call.

25. The FCC issued a biennial reminder for political campaigns about robocalls and text abuse on March 14, 2016 with enforcement advisory number 2016-03:

> **Prohibition Against Prerecorded Voice Messages and Autodialed Calls to Cell Phones and Other Mobile Services.** Prerecorded voice messages and autodialed calls (including autodialed live calls, prerecorded or artificial voice messages, and text messages) to cell phones and other mobile services such as paging systems are prohibited, subject to only three exceptions: (1) calls made for emergency purposes, (2) calls made with the prior express consent of the called party, (3) and calls made to collect debts "owed to or guaranteed by the United States." **This broad prohibition covers prerecorded voice and autodialed calls, including those sent by nonprofit or political campaign-related organizations.** Callers contending that they have the prior express consent to make prerecorded voice or autodialed calls to cell phones or other mobile service numbers have the burden of proof to show that they obtained such consent. Further, call recipients may revoke their consent to be called using any reasonable method including verbally or in writing.

FCC Enforcement Advisory No. 2016-03, available at https://docs.fcc.gov/public/attachments/DA-16-264A1.pdf (accessed July 17, 2020) (citations omitted, second emphasis added).

26. On July 6, 2020, the U.S. Supreme Court rejected a challenge by political organizations seeking to invalidate the TCPA's restrictions on political campaign calls and texts, holding that "plaintiffs still may not make political robocalls to cell phones[.]" *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 2020 WL 3633780, at *2 (U.S. July 6, 2020).

## FACTUAL ALLEGATIONS

27. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

28. On or around July 16, 2020, Plaintiffs received autodialed and pre-recorded calls on their cellular phones from a group identifying itself as "No Tax for Nash."

29. Plaintiff Rachael Anne Elrod was sitting at home with her husband on the evening of July 16, 2020, when her cellular phone rang. The incoming telephone number, (615) 348-5237, was not familiar to her. She answered the call on speakerphone and said "Hello?" There was silence, and she said "Hello?" a second time. Then a prerecorded message played, featuring a female voice saying:

> Nashville voters, if you would like to sign the recall petition for the mayor and council members who supported the 34% property tax increase, we will be at all 11 polling locations on Friday and Saturday for early voting. If you have any questions, find us on Facebook or go to our website, notax4nash.com. Have a wonderful evening, and don't forget to vote! Paid for by No Tax 4 Nash.

30. Elrod recognized the call as using an automated telephone dialing system because there was a significant delay after she answered before the recorded message began. In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

31. Plaintiff Andrew Kaufman received an identical call on the evening of July 16, 2020. He was at home with his family when he received an incoming call on his cellular phone from (615) 348-5237, a number he did not recognize. He did not answer the call but allowed it to go to his voicemail.

32. Upon checking his voicemail, Kaufman heard a prerecorded message identical to the message described in paragraph 29. He recognized the call as using an automated telephone dialing system because there was an approximately three-second delay at the beginning of the voicemail message before the recorded message began. In addition, the voice tone and background noise on the message sounded prerecorded, as opposed to a live voice.

33. Plaintiff Sarah Martin received an identical call on the evening of July 16, 2020. She was at home with her husband at approximately 8:32 p.m. when she received an incoming

call on her cellular phone from (615) 348-5237, a number she did not recognize. She did not answer the call, and it went to her voicemail.

34. Upon checking her voicemail, Martin heard a prerecorded message identical to the message described in paragraph 29. She recognized the call as using an automated telephone dialing system because there was an approximately three-second delay at the beginning of the voicemail message before the recorded message began. In addition, the voice tone and background noise on the message sounded prerecorded, as opposed to a live voice.

35. That evening, dozens of residents and former residents of Nashville complained on social media platforms about receiving an annoying, harassing prerecorded "robocall" playing the message described in paragraph 28. Some people posted screenshots of voicemail messages from the same phone number that called Elrod and Kaufman; they appeared to be identical to the voicemail message received by Mr. Kaufman.

36. Defendants are, and at all times mentioned herein were, "persons," as defined by 47 U.S.C. § 153(39).

37. Defendant "No Tax 4 Nash" paid for, authorized, and directed the unwanted robocalls to Plaintiffs and members of the proposed class, according to the recorded message on the call.

38. Defendant Jim Roberts controls Defendant No Tax 4 Nash, and the mailbox where it receives mail is registered in his name.

39. Defendant Michelle Foreman is "spearhead[ing]" Defendant No Tax 4 Nash.[12] She is the entity's public "spokeswoman" and representative.[13] She works in concert with "a small team of people that may not want to be named[.]"[14]

40. According to media reports, Defendant Roberts, leader of a political referendum campaign to implement the Nashville Taxpayer Protection Act, is involved with the illegal robocall campaign, along with Defendant Foreman and Defendant Kimberly Edwards.[15]

41. Other individuals and/or entities whose names are not known to Plaintiffs but will be revealed in discovery are funding and directing the illegal robocall campaign described above,[16] or placing the illegal calls described herein as agents of one or more Defendants. Courts "have routinely found that parties are permitted to conduct discovery to discover the identities of John Doe defendants." *Martin v. Glob. Mktg. Research Servs., Inc.*, No. 614CV1290ORL31KRS, 2015 WL 6083537, at *6 (M.D. Fla. Oct. 15, 2015) (TCPA case).

---

[12] Tennessee Star, "Tennessee Star Senior Reporter Laura Baigert Discusses Two Grassroots Nashville Campaigns Opposing Mayor Cooper's Property Tax Increase," https://tennesseestar.com/2020/05/28/tennessee-star-senior-reporter-laura-baigert-discusses-two-grassroots-nashville-campaigns-opposing-mayor-coopers-property-tax-increase/ (accessed July 17, 2020).

[13] Tennessee Star, "Grassroots Groups Pledge to Recall Nashville Mayor and Council Members Who Vote for a Property Tax Increase," https://tennesseestar.com/2020/06/17/grassroots-groups-pledge-to-recall-nashville-mayor-and-council-members-who-vote-for-a-property-tax-increase/ (accessed July 17, 2020).

[14] Tennessee Star, "Citizens Fight Back Against Mayor John Cooper's Proposed 32 Percent Property Tax Increase," https://tennesseestar.com/2020/05/27/citizens-fight-back-against-mayor-john-coopers-proposed-32-percent-property-tax-increase/ (accessed July 17, 2020).

[15] Nate Rau, *Tennessee Lookout*, "Secretly-funded efforts target mayor, Nashville tax policy," https://tennesseelookout.com/2020/07/17/nashville-lawyer-leads-secretly-funded-group-to-to-recall-mayor-change-tax-approval/ (accessed July 17, 2020); Nate Rau, July 16, 2020 Tweet, https://twitter.com/tnnaterau/status/1283945302236508163.

[16] *See* Tennessee Star, "Carol Swain Describes Grassroots Movement to Stop the 32 Percent Property Tax Increase Proposal," May 22, 2020, *available at* https://tennesseestar.com/2020/05/22/nashville-taxpayer-protection-act-carol-swain-describes-grassroots-movement-to-stop-the-32-perecent-property-tax-increase-proposal/ (describing private meeting with mayor and "important citizens" and "concerned citizens" including Michelle Foreman, Lee Beaman, Carey Bringle, Steve Moore, Karen Moore, and Carol Swain).

42. In receiving unwanted and unsolicited calls on their cellular telephones, Plaintiffs suffered concrete harm in the form of lost time spent fielding the unwanted calls, loss of use of their cellular telephones as the calls came in, loss of capacity of the voice mailbox (in Mr. Kaufman's and Ms. Martin's case), invasion of their privacy, and intrusion upon their seclusion and evening time with their families.

43. All telephone contact made by or at the direction of Defendants to Plaintiffs on their cellular telephones occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

44. The telephone numbers on which Defendants used to contact Plaintiffs via an "artificial or prerecorded voice" made by an "automatic telephone dialing system" were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

45. Plaintiffs did not provide their "prior express consent" allowing Defendants to place telephone calls to Plaintiffs' cellular phone utilizing an "artificial or prerecorded voice" and placed by an "automatic dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A). In fact, Plaintiffs never had any dealings with Defendants before receiving the call paid for by No Tax 4 Nash.

46. Telephone calls made to Plaintiffs' cellular phones by Defendants were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

47. Telephone calls to Plaintiffs' cellular phone made by Defendants utilized an "artificial or prerecorded voice" and an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

Case 3:20-cv-00617   Document 1   Filed 07/17/20   Page 11 of 17 PageID #: 11
11

48. Defendants bear the burden of demonstrating that they placed the calls with Plaintiffs' prior express consent. *See, e.g.*, *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014).

## CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action on behalf of himself and behalf of all other persons similarly situated (hereinafter referred to as "the Class").

50. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons in the United States who received a call from "No Tax 4 Nash" from an automated telephone dialing system and/or utilizing a prerecorded voice on or after July 16, 2020, without the recipients' prior express consent.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are a member of, the Class. Excluded from the Class are Defendants and any entities in which a Defendant has a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiffs' counsel, and any claims for personal injury, wrongful death and/or emotional distress.

51. Plaintiffs do not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the thousands.

52. Plaintiffs and all members of the Class have been harmed by Defendants' acts, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

53. This Class Action Complaint seeks injunctive relief and money damages.

54. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendants and/or any vendors who placed the illegal calls on their behalf.

55. There are well defined, nearly identical, questions of law and fact affecting all Class members. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether non-emergency calls made to Plaintiffs and Class members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;

   b. Whether such calls were made by or at the direction of one or more of the Defendants;

   c. Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated) to make such calls;

   d. Whether Defendants' conduct was knowing and/or willful;

   e. Whether Defendants are liable for damages, and the amount of such damages; and

   f. Whether Defendants should be enjoined from engaging in such conduct in the future.

56. As persons who received telephone calls using an automatic telephone dialing system and an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA and Rules, Plaintiffs assert claims that are typical of each Class member. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have no interests which are antagonistic to any member of the Class.

57. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

58. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for the violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and prerecorded the Class members did not provide prior express consent required under the statute to authorize such calls to their cellular telephones.

59. Defendants have acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

60. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

61. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

62. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

63. Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

64. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

65. The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

66. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

# THIRD COUNT

## CIVIL CONSPIRACY TO VIOLATE THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

68. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

69. Defendants agreed among themselves to violate the TCPA and injure Plaintiffs and Class members by conducting an illegal robocalling campaign to encourage Nashville residents to sign their referendum petition on Friday, July 17, 2020, and Saturday, July 18, 2020.

70. Defendant Roberts procured a post office box on behalf of Defendant No Tax 4 Nash, Defendants created a website, hired a telephone call vendor (a Defendant John Doe), directed and approved a recorded message to be played to unsuspecting call recipients, supervised the calls, and paid for these services, achieving the outcome of generating awareness of their referendum petition drive.

71. Defendants met in person and/or communicated by phone and email to achieve the objectives of the conspiracy.

72. Plaintiffs and Class members were injured by the conspiracy in the form of the annoyance, burden, time, and expense of dealing with the unwanted, illegal robocalls.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all Class members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every violation of the TCPA;

C. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class (and any Subclasses the Court deems appropriate), finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

F. A trial by jury on all counts so triable; and

G. Such other relief as the Court deems just and proper.

Date: July 17, 2020

Respectfully submitted,

**John Spragens, TN Bar No. 31445**
SPRAGENS LAW PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533

*Attorneys for Plaintiffs and the Proposed Class*